U.S. DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FAZLUR MAHAMMAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case Number: 18-cv-08173 |
| v. | ) |
| | ) Judge John Robert Blakey |
| PROSOFT TECHNOLOGY GROUP, INC., | ) |
| and INTELLIPEOPLE, INC. d/b/a | ) Magistrate Judge Susan E. Cox |
| KELLTON TECH SOLUTIONS, INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT
PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6)**

Defendants, Prosoft Technology Group, Inc. ("Prosoft"), and Intellipeople, Inc. ("Intellipeople") (collectively, "Defendants"), by their attorneys, hereby submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Fazlur Mahammad's ("Plaintiff") Verified Complaint, with prejudice, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.   INTRODUCTION**

**A.   Plaintiff's Verified Civil Complaint.**

On December 12, 2018, Plaintiff filed a two-count Verified Civil Complaint ("Complaint"). *See* Docket Entry 1. In his Complaint, Plaintiff alleges that he was: (Count I) subjected to forced labor in violation of the Trafficking Victims Protection Act, 18 U.S.C. §1589, *et seq*. ("TVPA" or the "Act"); and (Count II) required to pay a portion of the processing fees associated with his work visa in violation of 20 CFR § 655.731(c)(9)(ii) through (iii)(C). However, as explained in greater detail below, this lawsuit should be dismissed in its entirety because: (i) Plaintiff has failed to plead sufficient facts to establish that he has a plausible claim

of forced labor under the TVPA; (ii) to the extent Plaintiff is alleging violations of immigration law regulating the payment of wages, this Honorable Court lacks subject matter jurisdiction over claims related to wage issues impacting H-1B visa holders because the U.S. Department of Labor ("DOL") has exclusive, original jurisdiction over such matters; and (iii) this Honorable Court lacks original subject matter jurisdiction over claims related to H-1B visa processing fees because the DOL has exclusive, original jurisdiction over such matters.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1) Motion To Dismiss For Lack Of Jurisdiction.

In ruling on a motion under Rule 12(b)(1), "the district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir. 2008). However, unlike a 12(b)(6) motion, where the court can only consider the complaint and its attachments, on a 12(b)(1) motion, the district court may look beyond the jurisdictional allegations of the complaint to evidence that has been submitted on the issue to determine whether, in fact, subject matter jurisdiction exists. *Id*. at 656–57; *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) (the court may receive competent evidence such as affidavits, deposition testimony and the like in order to determine the factual dispute). Therefore, if the challenge to jurisdiction is factual, no presumption of truthfulness applies to the plaintiff's factual allegations, and the court is free to weigh all competent evidence and satisfy itself as to the existence of its power to hear the case. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir.), *cert*. denied, 513 U.S. 868 (1994); *Capitol Leasing Co. v. F.D.I.C*., 999 F.2d 188, 191 (7th Cir. 1993) (same). When the existence of subject matter jurisdiction is challenged by the defendant as a factual matter, the burden of proving jurisdiction rests with the plaintiff. *Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 443 (7th Cir. 2009).

### B. Fed. R. Civ. P. 12(b)(6) Motion To Dismiss For Failure To State A Claim.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See Gibson v. City of Chicago*, 910 F. 2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed.R.Civ.P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n. 14).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the U.S. Supreme Court explained that, while Rule 8(a)(2) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In order "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face . . .'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). Thus, "a pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555); *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (in order to survive a Rule 12(b)(6) motion, "a plaintiff has the obligation to provide the factual grounds of his entitlement to relief (more than mere labels and conclusions), and a formulaic recitation of a cause of action's elements will not do.") (citations and quotations omitted).

3

However, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in the complaint. *See*, *e.g.*, *Whitlock v. Brown*, 596 F.3d 406, 412 (7th Cir. 2010) ("A judicial admission trumps evidence. This is the basis of the principle that a plaintiff can plead himself out of court."). In considering a motion to dismiss, the district court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

### III. ARGUMENT

#### A. Count I Of Plaintiff's Complaint Should Be Dismissed In Its Entirety Pursuant To Rule 12(b)(6) Because Plaintiff Fails To Allege A Plausible Claim Of Forced Labor.

In order to state a claim for forced labor under the TVPA, a plaintiff must plead sufficient facts establishing that the defendant "obtained the labor or services of a person by any one of, or by any combination of, the following means: (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint . . ." 18 U.S.C. § 1589(a); *see also* 18 U.S.C. 1595(a), which contains a private right of action for violations of 18 U.S.C. § 1589.

##### 1. Plaintiff Has Not Alleged Actionable Threats/Harm.

As recognized by the First Circuit in *United States v. Bradley*, there is a distinction between "improper threats or coercion and permissible warnings of adverse but legitimate consequences" in enforcing the TVPA. 390 F.3d 145, 151 (1st Cir. 2004), judgment vacated on other grounds, 545 U.S. 1101 (2005). Here, even if Plaintiff's allegations of threats of

4

deportation are true, Defendants warnings that Plaintiff could lose his immigration status if his employment and H-1B visa were terminated were nothing more than "permissible warnings of adverse but legitimate consequences." *Bradley*, 390 F.3d at 151. Indeed, far from violating immigration law, once an employer terminates an H-1B visa employee, that employer has a legal obligation to report that the employment relationship has ended. *See* 8 CFR 214.2(h)(11). Accordingly, Plaintiff's allegations that he was "threatened" with the termination of his H-1B visa and being forced to leave the United States (*see* Cmplt. ¶¶ 13(1), 15) do not state a plausible claim for forced labor.

Plaintiff has also failed to plead sufficient facts showing that Defendants took steps to force him into providing labor, *i.e.*, prevented him from leaving the situation, an essential allegation to stating a viable claim. For example, the Ninth Circuit affirmed the dismissal of TVPA claims by a husband and wife because, among other reasons, the couple could not demonstrate that the defendants prevented them from leaving their allegedly undesirable working conditions. *See Headley v. Church of Scientology Int'l*, 687 F.3d 1173, 1180 (9th Cir. 2012) ("We emphasize that the [plaintiffs] had innumerable opportunities to leave the defendants."). Likewise, the victim in *United States v. Calimlim*, 538 F. 3d 706 (7th Cir. 2008) – a case cited by Plaintiff – had been restrained against her will because the defendants confiscated the victim's passport in the beginning stages of the forced labor and, once her visa expired, "she could not freely work for another employer in order to escape the threatened harm." *Id*. at 712.

In fact, the remaining cases cited by Plaintiff in his Complaint all reached the same conclusions – the defendant's conduct must have plausibly prevented the plaintiff/victim's voluntary exit from the challenged employment to establish a violation under the TVPA. For example, in *United States v. Kozminski*, 487 U.S. 931 (1988), the Court determined that threats

5

of deportation plausibly resulted in "harm" under the TVPA, but only because of the mental acumen of the victims.[1] *Id*. at 948. In explaining its holding, the Court explained that while it was plausible that the victims, who were "mentally retarded," could have been subjected to harm through threats of deportation, "such a threat made to an adult citizen of normal intelligence would be too implausible to produce involuntary servitude." *Id*. Plaintiff, a technology specialist, has not alleged that he lacks normal intelligence.

Likewise, in *Saraswat v. Jayaraman*, No. 15-cv-4680, 2016 U.S. Dist. LEXIS 133573 (E.D.N.Y. Sept. 28, 2016), the defendant confiscated the victim's visa and related immigration documents for the specific purpose of preventing the victim from being able to move about the country, travel abroad or seek new employment by transferring his employment visa. *Id*. at *4-5. Similarly, in *Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd*., 790 F. Supp. 2d 1134 (C.D. Cal. 2011), the victims' passports and visas were delivered directly to the defendants, who mailed those passports and visas out of the country in order to restrict the victims' movement. *Id*. at 1138. The victims were also housed in crowded quarters and subject to large recruiter fees if they attempted to leave the United States. *Id*.

Lastly, in *U.S. v. Garcia*, 2003 WL 22956917 (W.D.N.Y. 2003), the defendants threatened the victims with physical violence, isolated the victims by refusing to allow them to leave the overcrowded and unsanitary quarters for any reason aside from work, withheld food from the victims, told the victims that they would be hunted if they tried to leave, and threatened the victims with deportation back to Mexico.

Here, there are no allegations establishing that Plaintiff's was divested of his visa and other immigration documents or that his movements were restricted in *any way* by Defendants.

---

[1] These victims were isolated from society, housed by the defendants, and lacked freedom of movement.

6

To the contrary, Plaintiff, as a matter of law, was free to work for any other employer that would sponsor his H-1B status. Unlike the aforementioned victims of forced labor who could not escape the serious harm that they faced (including those who were mentally retard or living in the United States illegally and, therefore, could not pursue other opportunities), Plaintiff could have simply found a new job at *any time* over the course of his three (3) year employment if he was not satisfied with his working conditions by merely transferring the sponsorship of his visa to his new employer. *See* 8 CFR 214.2(h).[2]

Thus, Plaintiff's TVPA claim fails because he has not plead facts plausibly establishing that he was subjected to harm deemed sufficient for a violation of the TVPA.

### 2. Plaintiff Has Not Sufficiently Alleged An Actionable Abuse Of Law Or Legal Process.

Although Plaintiff contends that that he was subject to "abuse or threatened abuse of law or legal process" – allegedly because Defendants offered to keep him on the payroll for two (2) months after his separation and offered to relieve him from his obligations set forth in his non-compete agreement in exchange for Plaintiff's agreement to provide Defendants with a global release (*see* Cmplt. ¶¶ 24-27) – this does not state a claim based on abuse of the legal process. Plaintiff's characterization of these actions, *i.e.*, that they were "coercive and overreaching" and designed to prevent "Plaintiff from seeking other employment" (*see* Cmplt. ¶ 13(11)), are without merit. Even when viewed in a manner drawing all reasonable inferences in Plaintiff's favor, there is nothing abusive, coercive or otherwise improper about the foregoing allegations,

---

[2] The regulation governing H-1B temporary employees is 8 CFR 214.2(h) and this regulation provides the procedure for H-1B nonimmigrants seeking to change employers. The regulation provides that if the alien is in the United States and seeks to change employers, the prospective new employer must file a petition on a Form I-129, requesting classification and an extension of the alien's stay in the United States. *See* 8 CFR 214.2(h)(2)(D).

and Plaintiff's unadorned, conclusory allegations to the contrary do not suffice to carry his claim. *See Iqbal*, 556 U.S. at 678. Rather, Plaintiff has admitted that his job duties required him to perform technology services for Defendants' clients. (*See* Cmplt. ¶¶ 7, 17). Thus, there is nothing overreaching or otherwise nefarious about Defendants using a non-compete agreement to prevent an employee from using Defendants' client contacts, which the employee would not have otherwise possessed but for his employment, to prevent unfair competition. That's the very essence of how non-compete agreements are used for protecting legitimate business interests. Indeed the Seventh Circuit held that "[l]egitimate reasons exist to uphold noncompetition covenants" and that the "recognized benefit of reasonably enforced noncompetition covenants are by now beyond question." *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 265 (7th Cir. 1981). Further, under applicable Illinois law "post-employment restrictive covenants . . . have a social utility" for the protection of employers. *Tower Oil & Tech. Co. v. Buckley*, 99 Ill. App. 3d 637, 642, 54 Ill. Dec. 843, 848, 425 N.E.2d 1060, 1065 (1981). Accordingly, an employer is "always free to protect its interests through a reasonable, restrictive covenant not to compete." *AMP, Inc. v. Fleischhacker*, 823 F.2d 1199, 1206 (7th Cir. 1987). Simply put, Plaintiff's attempt to recharacterize a non-compete agreement as an abuse of law plainly fails to meet the minimum threshold to support a claim under the TVPA.

Similarly, Defendants' offer to release Plaintiff from his non-compete agreement was in no way coercive or overreaching. Far from hindering Plaintiff's ability to find new employment, Defendants' offer to completely release Plaintiff from the obligations set forth in his non-compete agreement would have expanded Plaintiff's employment options, allowing Plaintiff to solicit Defendants' clients. Further, it is "a well-settled principle that the law generally favors the encouragement of settlements." *Airline Stewards & Stewardesses Asso. v. Am. Airlines*, *Inc.*,

8

573 F.2d 960, 963 (7th Cir. 1978); *see also Birbalas v. Cuneo Printing Indus., Inc.*, 140 F.2d 826, 828 (7th Cir. 1944) ("it has long been public policy to favor settlement of controversies[.]"). Plaintiff has alleged no actionable abuse of law simply because Defendants offered him a settlement release that broadened his employment opportunities. Not only does Plaintiff misguidedly portray an offer of settlement as an abuse of law, but Plaintiff's use of settlement terms as alleged evidence of wrongdoing runs afoul with Rule 408 of the Federal Rules of Evidence. "Settlements, offers to settle, and settlement negotiations are all inadmissible to prove liability under the Federal Rules of Evidence." *Russell v. Ppg Indus.*, 953 F.2d 326, 334 (7th Cir. 1992) (citing Fed. R. Evid. 408).

Moreover, under applicable immigration rule, Plaintiff was entitled to a 60-day grace period in which to find new employment once his employment with Defendants' ended. *See* 8 CFR 214.1(l)(2). By offering to keep Plaintiff on the payroll for an additional 60 days following his separation, Defendants attempted to ensure that there was no break in pay as Plaintiff transitioned into new employment. None of the foregoing is remotely designed to force an outcome whereby Plaintiff is immediately forced leave the United States or otherwise subjected to serious harm prohibited by the TVPA.

Additionally, as admitted in the Complaint, the non-compete agreement and settlement offer were both presented to Plaintiff for application at the *end* of Plaintiff's employment. This alleged abuse of the legal process, therefore, could not have been the means by which Plaintiff was compelled into forced labor *during* his employment. *See United States v Peterson*, 627 F Supp. 2d 1359 (MD. Ga. 2008) (identifying an alleged misuse of the legal process is not enough to show a violation of 18 USCS § 1589(3) because the defendant must have misused the legal process to coerce another into providing labor).

9

> **B.** **This Honorable Court Lacks Jurisdiction Of Challenges To An H-1B Visa Employer's Payroll Practices Absent Exhaustion Of Administrative Remedies With The DOL.**

The alleged harm supporting Plaintiff's human trafficking claim is primarily based upon allegations that Defendants failed to properly pay wages required by immigration laws that are enforced by the DOL. According to Plaintiff, Defendants: regularly threatened Plaintiff with deportation or visa revocation if Plaintiff did not pay cash *in order to be paid his salary* (Cmplt., ¶ 13(1)); threatened Plaintiff with the revocation of his visa if he *did not pay for his salary* in March 2017 (Cmplt., ¶ 13(2)); *failed to deposit Plaintiff's salary* into his bank account (Cmplt., ¶ 13(4)); *failed to reimburse* Plaintiff for his benefits, *i.e.*, employment related travel expenses (Cmplt., ¶ 13(5)); and required Plaintiff *to pay cash in exchange for his salary* processed on June 20, 2017. (Cmplt., ¶ 13(8)).

For purposes of Defendants' Motion to Dismiss, assuming that all of the foregoing allegations are true and correct, this Honorable Court should not consider Plaintiff's claims regarding Defendants' pay practices because district courts have administrative review over such claims only after the administrative process at the DOL has fully been exhausted. Specifically, 20 C.F.R. § 655.731 regulates, *inter alia*, H-1B visa employers' payment of required wages. *Id.* at Section (C), which is titled "Satisfaction of Required Wage Obligation," and mandates that the "wage must be paid to the employee, cash in hand, free and clear, when due . . ."

The wage mandates provided in 20 C.F.R. § 655.731(c), which is cited by Plaintiff in his Complaint (*see* Cmplt., ¶¶ 8 and 31), are enforced exclusively by the DOL. *See* 20 C.F.R. 655.805. Pursuant to 20 C.F.R. 655.805, the DOL Administrator has the jurisdiction to investigate and to "determine whether an H-1B employer has – (2) Failed to pay wages (including benefits provided as compensation for services), as required under § 655.731." *Id.* at Section (a)(2); *see also* 20 C.F.R. § 655.731(d). If a party is dissatisfied with the Administrator's

10

decision, the next step would be to make an appeal to an Administrative Law Judge staffed at the DOL. *See* 20 C.F.R. §§ 655.820, 655.840. If a party disagrees with the Administrative Law Judge's decision, that party can then internally petition to the Secretary of Labor for review. *See* 20 C.F.R. §§ 655.840, 655.845. Only after appealing to the Secretary of Labor, a party who is still dissatisfied may then pursue remedies in the appropriate United States District Court. *See* 20 C.F.R. § 655.850; *see also Alves v. Masters Entm't Group, LLC*., 2008 U.S. Dist. LEXIS 75736, at *10-12 (N.D. Ill. Sept. 30, 2008) (dismissing claim arising under H-1B visa status after agreeing with the employer's position that "no private cause of action for a violation of the law governing H-1B visas unless administrative remedies have been exhausted.").

For these reasons, this Honorable Court lacks subject matter jurisdiction over Plaintiff's challenges to Defendants' alleged pay practices governed by 20 C.F.R. § 655.731(c).

### C. Count II Of Plaintiff's Complaint Should Be Dismissed Because Plaintiff Has No Private Right Of Action To Recover Processing Fees Paid For An H-1B Visa.

In Count II, citing 20 CFR § 655.731, which is a Department of Labor ("DOL") regulation, Plaintiff seeks to recover expenses related to processing fees for his H-1B visa. *See* Count II. However, there is no private right of action for this claim. Specifically, the District Court in *Vorrey v. City of Brownsville*, No. B: 17-cv-222, 2019 U.S. Dist. LEXIS 5399 (S.D. Tex. Jan. 11, 2019)[3] was presented this very issue and held that this claim had to be dismissed because the Court lacked subject matter jurisdiction. As the Court explained, "[u]nder federal regulations, an employer may not 'recoup a business expense(s) of the employer (including attorney fees and other costs connected to the performance of H-1B program functions which are

---

[3] The claim for visa fees was addressed in the Report and Recommendation of the Magistrate Judge. *See Vorrey v. City of Brownsville*, 2018 U.S. Dist. LEXIS 219114 (S.D. Tex. Oct. 5, 2018), which was adopted by the District Court in *Vorrey v. City of Brownsville*, No. B: 17-cv-222, 2019 U.S. Dist. LEXIS 5399 (S.D. Tex. January 11, 2019). Citations to ("*Id.* at *__") in this section of Defendants' Memorandum of Law shall refer to the Report and Recommendation of the Magistrate Judge.

required to be performed by the employer, *e.g.*, preparation and filing of LCA and H-1B petition)." *Id*. at *21 (citing 20 C.F.R. § 655.731(c)(9)(ii)). "If an employer does recoup these expenses, the Department of Labor 'will consider the amount to be an unauthorized deduction from wages even if the matter is not shown in the employer's payroll records as a deduction.'" *Id*. at *21-22 (citing 20 C.F.R. § 655.731(c)(12)).

Holding there is no private right of action to recover visa expenses regulated by the DOL, the Court went on to explain that the "proper remedy, in the event that an employer unlawfully deducts H-1B fees and costs, is to file a complaint with the Administrator of the Wage and Hour Division, Employment Standards Administration in the Department of Labor ('the Administrator')." *Id*. (citing 20 C.F.R. § 655.731(d)).[4] "If the Administrator finds that a violation has occurred, the Administrator will seek a prevailing wage determination from the Employment and Training Administration ('ETA'), asking the ETA to determine any violations and to compute any necessary back wages from the unauthorized deduction." *Id*. at *22. Thereafter, any "appeals from a determination by the ETA go to an administrative law judge, and then to the Department of Labor's Administrative Review Board ('ARB')." *Id*. Only after the foregoing administrative process has been completed may a party "appeal the ARB's decision as a final agency action under the Administrative Procedures Act." *Id*. "There is, however, 'no private right of action' to recover the costs of filing an H-1B visa." *Id*.; *see also Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948 (S.D. Ind. 2013) (dismissing the common law equitable claim and holding that the "Court finds that Mr. Panwar must exhaust his administrative remedies with the DOL before he can bring a claim based on his payment of H-1B

---

[4] *See also* 20 C.F.R. § 655.805(a)(2 & 11), which provide that the "Administrator" has jurisdiction to investigate wage claims and claims that an employer improperly required the employee to pay for visa processing fees.

12

visa fees in violation of 20 C.F.R. § 655.731. Therefore, the Court grants the Defendants' motion to dismiss Count VI.").

As was the case in *Vorrey*, here "[t]here is no evidence in the record that [the plaintiff] ever filed a claim with the Department of Labor making these allegations. Absent making such a claim – and following the administrative process to completion – the Court lacks jurisdiction over the claim." *Id*. at *22-23 (citing *Shah v. Wilco Sys., Inc*., 126 F. Supp. 2d 641, 648 (S.D.N.Y. 2000) (noting that judicial review can only happen "once the administrative procedure has been exhausted."). As such, this Honorable Court lacks jurisdiction over Count II, necessitating dismissal thereof.

### IV.    CONCLUSION

Count I of the Complaint does not allege actionable forced labor under the TVPA. As the Court in *Shukla* explained, "[although labor and employment laws seek to eradicate certain societal evils, such as poverty and discrimination, the TVPA seeks to address the evil of human trafficking and forced labor, both of which strike directly at the core individual liberty. That is, the TVPA protects infringement upon an individual's liberty from unlawful restraint in an attempt to eradicate modern-day slavery. ***The type of abuse addressed by the TVPA is so extreme, offensive, and contrary to fundamental human rights as to distinguish it from the type of conduct that ordinarily gives rise to violations of labor and employment laws***." *Shukla v. Sharma*, No. 07-cv-2972, 2009 U.S. Dist. LEXIS 90044, at *21-23 (E.D.N.Y. Aug. 14, 2009) (emphasis added). And Plaintiff's remedies, if any, for the recovery of alleged H-1B visa fees set forth in Count II are the providence of the United States Department of Labor, Plaintiff has not exhausted his administrative remedies, and therefore this Court does not have jurisdiction to hear them.

For these reasons, Plaintiff's Complaint should be dismissed in its entirety.

Dated: February 19, 2019	Respectfully submitted,

PROSOFT TECHNOLOGY GROUP, INC.
AND INTELLIPEOPLE, INC, Defendants

By:   /s/*Brian K. Jackson*
          One of their Attorneys

Thomas S. Bradley
Brian K. Jackson
Laner Muchin, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60654
(312) 467-9800 / (312) 467-9479 (fax)
Firm ID: 90243

## CERTIFICATE OF SERVICE

I, Brian K. Jackson, an attorney, hereby certify that, on February 19, 2019, filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT PURSUANT TO RULE 12(B)(1) AND RULE 12(B)(6)** in the above-captioned matter through the Court's electronic filing system, which served a copy of same upon the following interested parties of record:

> Michael G. Holton (*Pro Hac Vice*)
> William H. Fuller, Jr.
> Fuller, Taylor & Holton, PC
> 5478 Carmichael Parkway, Suite D
> Montgomery, Alabama 36117
> gholtonattorney@gmailcom
> bhfuller@att.net
>
> Patrick A. Salvi
> Andrew J. Burkavage
> Salvi, Schostok & Pritchard P.C.
> 161 North Clark Street, Suite 4700
> Chicago, Illinois 60601
> aburkavage@salvilaw.com
> psalvi@salvilaw.com
>
> /s/*Brian K. Jackson*
> Brian K. Jackson